United States District Court
for the Eastern District of North Carolina
Western Division

Jarred Javon Ford ) No. 5:23-cv-00197-M
)
)
v. )
)
) COMPLAINT: EMTALA VIOLATIONS;
NASH COUNTY GENERAL HOSPITAL, INC, ) MEDICAL MALPRACTICE
MADJIMBAYE CHARLES NAMDE M.D., )
ALEC LAUREN PERRY P.A. )

Plaintiff, complaining of the defendants, alleges and says:

1. Plaintiff brings this complaint for violations of 42 USC 1395dd, also known as the Federal Emergency Medical Treatment and Active Labor Act (EMTALA) and for supplemental state law Medical Malpractice claims.

2. The Courts jurisdiction arises under 28 USC 1331 and 42 USC 1395dd. Plaintiff also has alleged state law claims for medical malpractice, all of which derive from a common nucleus of operative fact. The court has supplemental jurisdiction over these claims under 28 USC 1367, because they are related to all claims that they form part of the same case or controversy under Article III of the United States Constitution.

3. Plaintiff is an individual and has resided at 2549 Langdon Ave S., City of St. Petersburg, County of Pinellas, State of Florida at all times pertinent to this action.

4. Defendant NASH COUNTY GENERAL HOSPITAL, INC, is a hospital, organized and licensed to do business in the state of North Carolina. Defendant does business and maintains an emergency room at 2460 Curtis Ellis Dr., City of Rocky Mount, County of Nash, State of North Carolina. Defendant has provider agreement with the secretary of Health and Human Services pursuant to 42 USC 1395dd cc and is a participating hospital within the meaning of 42 USC 1395dd (e) at all times pertinent to this action.

5. Defendant MADJIMBAYE CHARLES NAMDE M.D., at all times material held himself out to be a physician licensed to practice medicine within North Carolina, practicing in the specialties of general medicine and emergency room medicine.

6. Defendant ALEC LAUREN PERRY P.A. at all times material held himself out to be a physician assistant ~~under~~ licensed to practice medicine within North Carolina, practicing in the specialties of general medicine and emergency room medicine.

7. At all times material to this complaint Madjimbaye Namde M.D. and Alec Perry P.A., are acting as employees, apparant employees, agents or servents of Nash County General Hospital, Inc, acting within the scope of their employ

8. On February 4th 2021 Plaintiff arrived at Defendants' emergency room by ambulance. Plaintiff had obvious open fractures on multiple extremities and arrived with a altered mind state. Examination and treatment was requested on Plaintiff's behalf.

9. Plaintiff's initial examination was delayed. Plaintiff remained in the waiting area for several minutes without recieving examination or treatment.

10. Defendant Hospital, acting through it's employees, apparent employees, agents or contractors determined that Plaintiff had an emergency medical condition when he was presented to the emergency department.

11. Defendant Hospital, acting through it's employees, apparent employees, agents or contractors, failed to provide an appropriate medical screening examination within the capability of it's emergency department, including routinely available ancillary services, to determine whether an emergency medical condition existed.

## FIRST CAUSE OF ACTION
## FAILURE TO PROVIDE APPROPRIATE MEDICAL SCREENING

12. Plaintiff incorporates by reference Paragraphs 1 through 11.

13. Plaintiff recieved a disparate medical examination that was cursory and did not qualify as an "appropriate medical screening" within the meaning of EMTALA. Examination did not involve the scrutiny and attention to detail normally

provided by Defendant for other patients in similar circumstances. Defendant failed to properly observe and document Plaintiff's injuries and failed to obtain accurate vitals.

14. Defendants' discriminatory failure to appropriately screen Plaintiff in the usual manner was motivated by economic considerations based on an assumption Plaintiff lacked health insurance and income, as well as, personal animosity based on Plaintiff's race and the fact that Plaintiff injured a law enforcement officer who was also taken to Defendant Hospital.

15. As a proximate result of Defendant's failure to appropriately screen and examine Plaintiff, Plaintiff's Hemorrhagic Shock, Hyperkalemia, Acute Respiratory Failure, Hemopneumothorax and Hypothermia went undiagnosed and untreated until such time that Plaintiff had suffered unnecessary aggravation of these injuries and emotional distress, has incurred and will continue to incur medical care as a result of the delay of diagnosis and treatment of injuries.

16. Defendant's actions or inactions violated 42 USC 1395dd.

## SECOND CAUSE OF ACTION
## FAILURE TO STABILIZE / INAPPROPRIATE TRANSFER

17. Plaintiff incorporates by reference paragraphs 1 through 16.

18. Defendant's staff members who examined Plaintiff determined from Plaintiff's acute symptoms that Plaintiff had an emergency medical condition and that failure to provide immediate medical attention could reasonably be expected to result in placing the Plaintiff's health in serious jeopardy, serious impairment of Plaintiff's bodily functions, and serious dysfunction of Plaintiff Circulatory and Central Nervous Systems.

19. Defendant failed to provide medical treatment within the capabilities of it's staff and facilities to stabilize Plaintiff's emergency medical condition.

20. Defendant refused to admit Plaintiff and instead improvidently transferred Plaintiff to another hospital.

21. Defendant failed to provide medical treatment within it's capability to minimize the risks to the health of Plaintiff during transfer.

22. Defendant failed to send Plaintiff's medical record to the recieving facility.

23. Defendant failed to provide necessary and medically appropriate life support measures and equipment during the transfer.

24. Defendant hospital held itself out as capable of making a proper diagnosis and treatment of any and all physical disabilities arising from any cause, and inviting the public, including Plaintiff, to use it's services at a reasonable charge; and thereby Defendant undertook, operating through it's agents

and employees, Madjimbaye Namde M.D. and Alec Perry P.A., who was then and there acting within the scope of their employment undertook to render proper medical care and assistance to Plaintiff, and it then and there became and was, the duty of defendants to exercise reasonable care to see that Plaintiff obtained proper medical examination and attention.

25. As a direct and proximate result of Defendant's failure to stabilize Plaintiff, and Defendant's inappropriate transfer of Plaintiff, Plaintiff suffered an aggravation of the Circulatory Failure, Central Nervous System Failure, Trauma and Shock for which Plaintiff originally sought examination and treatment. Plaintiff as a result suffered serious and permanent injuries including, Hemorrhage Shock, Hyperkalemia, Acute Respiratory Failure, Hemopneumothorax, and Hypothermia.

WHEREFORE, Plaintiff requests judgement against Defendant for EMTALA violations as follows:

1. Compensatory damages in the amount of $350,000 for past, present, and future medical expenses, pain and suffering, emotional distress, disablement and loss of consortium.

2. Punitive damages in the amount of $500,000; and

3. Cost of this action and such other relief as the court may deem proper.

# MEDICAL MALPRACTICE

1. Plaintiff incorporates by reference Paragraphs 1 through 25 of EMTALA action.

2. Defendant Hospital failed to exercise ordinary care and failed to posess and apply the knowledge and to use the skill and care of reasonably well-qualified hospitals under the circumstances giving due consideration to the locality involved. Its negligence included, but was not limited to, failing to have in place procedures and protocols for the evaluation of patients in its emergency room, such as Plaintiff and negligently granting, maintaining, and failing to terminate the staff priviledges of Physician and Physician Assistant.

3. Defendant Hospital allowed Physician and Physician Assistant to perform services for Plaintiff accepted under the reasonable belief the services were being rendered by hospital or its servants. In so doing Defendant Hospital held out Physician and Physician Assistant as its employees and Plaintiff looked to Defendants for care. Additionally, Defendant Hospital represented that Physician and Physician Assistant were agents or employees and thereby caused Plaintiff to justifiably rely upon the skill or care of Defendants.

4. Defendant Physician and Physician Assistant failed to possess and apply the knowledge and failed to use the skill and care ordinarily used by reasonably well-qualified emergency room Physicians, giving due consideration to the locality involved. In failing to diagnose and treat Plaintiffs' obvious Shock and Trauma, Defendants action

of Plaintiff.

5. At all times relevant herein, Defendants expressly and implicitly represented to the general public that they practiced medicine in a skilled and proper manner, and held themselves out to be specialists in the field of general and emergency medicine, having the professional learning, skill and ability possessed by other physicians specializing in general and emergency medicine in the same or similar communities at the time of the alleged acts.

6. At all times relevant herein, Defendants have a duty to provide Plaintiff with medical care and treatment in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities under the same or similar circumstances.

7. On the 4th day of February 2021, Defendants undertook to provide Plaintiff with medical care and treatment, and a doctor-patient relationship was thereby established between the Plaintiff and the Defendants.

8. Plaintiff was seen by Defendants for Hypotension, Shock and Trauma from multiple gunshot wounds.

9. Plaintiff recieved a cursory examination and it was determined that Plaintiff sustained several gunshot wounds. Plaintiff was also noted to be diaphoretic, lethargic, and altered. Defendants were unable to obtain a blood pressure or

10. Defendants determined Plaintiff had an emergency medical condition. Plaintiff recieved etomidate and succinylcholine and was intubated. A blood pressure was obtained manually which read 90/40, mass blood transfusion protocol was started and Plaintiff recieved 2 units of Red Blood Cells via rapid infuser and 1 unit of Fresh Frozen Platelets intraveinously, as well as 1g of TXA and 2g Anicef. Plaintiff was then taken to CT Scan while EMTALA transfer form was completed by Defendants.

11. Plaintiff did not recieve emergency medical care after EMTALA form was completed. ~~Defendant~~ Plaintiff recieved basic medical care from Defendants eventhough Plaintiff was still suffering from a emergency medical condition. Defendants obtained CT Scans, took X-rays, allowed Nash County Sheriff Deputies to process Plaintiff for gunshot residue and administered Propofol, Cefazolin and Gentamicin intraveinously while Plaintiff waited approximatly 50 minutes for transportation to transforee hospital. Defendants denial of emergency medical condition stabilization, or adequete emergency medical treatment, allowed aggravation of Plaintiff's Hypotension, Trauma, Shock, Circulatory System and Central Nervous System failures.

12. In providing Plaintiff with medical care on the 4th day of February 2021, Defendents failed to exercise reasonable care and diligence in the application of their knowledge and skill to the Plaintiff's care, failed to use their best judgement in the treatment and care of the Plaintiff, and failed to provide medical care in accordance with the standards of practice among members of the same health care profession with similar training

and experience in the same or similar communities under the same or similar circumstances, including but not limited to the following respects:

(a) By failing to properly screen and examine Plaintiff to determine severity of Plaintiff's injuries and accurately diagnosing wounds and injuries.

(b) By failing to properly treat Plaintiff's known injuries and provide blood to prevent deterioration of Plaintiff's health.

(c) By failing to give emergency medical care within the capabilities of the Defendants staff and equipment.

(d) By otherwise failing to provide Plaintiff with medical care and treatment in accordance with the standards of practice.

13. As a direct result of the aforementioned negligence and conduct of Defendants, the Plaintiff did not recieve appropriate medical care and treatment and has suffered from serious injuries and damages, including but not limited to; Hemorrhagic Shock, Hyperkalemia, Acute Respiratory Failure, Hemopneumothorax, Pneumothorax, Hypothermia, Emotional Distress and loss of consortium.

14. Plaintiff is entitled to recover damages in an amount in excess of twenty-five thousand dollars ($25,000) from the Defendants.

15. Plaintiff alleges Rule 9(j), requiring certification of a medical malpractice action prior to it being elidgable to be filed, is unconstitutional in violation of Article I, Section 18 of the North Carolina Constitution and the Equal Protection Clauses of the North Carolina and United States Constitutions.

DEMAND FOR JUDGEMENT

WHEREFORE, Plaintiff demands trial by jury and;

1. Compensatory damages in an amount in excess of twenty-five thousand dollars ($25,000).

2. Punitive damages in an amount in excess of twenty-five thousand dollars ($25,000).

3. Interest as provided by law, the costs of this action, and for such other and further relief as the court deems just and proper.

This the 9th day of April 2023,

*Jarred Javon Ford*
Jarred Javon Ford
Pro Se

## Affidavit to Proceed in Forma Pauperis

I, Jarred Javen Ford, pursuant to 28 USC 1915(a), swear and affirm under penalty of perjury that because of my poverty and incarceration, I cannot prepay the docket fees of my civil action or post bond for them. I believe I am entitled to redress and my civil action is not frivolous. I currently have one civil action and one appeal active in Forma Pauperis and request that this action be allowed in Forma Pauperis aswell.

Dated: April 9th 2023

*Jarred Javen Ford*
Jarred Javen Ford
Pro Se